UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW POWER,<br><br>      *Plaintiff,*<br>   v.<br><br>CONNECTWEB TECHNOLOGIES, INC., MICHAEL BEAULIEU, PAUL BEAULIEU, RUBBER STAMP CHAMP, INC., ANCHOR RUBBER STAMP & PRINTING CO., INC., THE J.P. COOKE COMPANY, and GOOGLE LLC,<br><br>      *Defendants.* | Civil Action No. 1:22-cv-10030-JGD |

**DEFENDANT THE J.P. COOKE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and Local Rule 7.1, Defendant The J.P. Cooke Company ("**J.P. Cooke**") hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiff Matthew Power's ("**Plaintiff**") First Amended Complaint ("**Complaint**") against it for Lack of Personal Jurisdiction.

## I.    INTRODUCTION

J.P. Cooke is a small, fourth-generation family-owned and operated corporation that was founded and continues to operate in Omaha, Nebraska, where it produces and sells rubber stamps. It contracted with Defendant Connectweb Technologies, Inc. ("**Connectweb**") to host its website and provide its Custom Vantage Web ("**CVW**") software--the flagship software Connectweb developed in 1999 to serve the rubber stamp industry--to aid in the sale of its products. Plaintiff claims to have acquired the copyright to CVW in 2016, by performing updates to the software at Connectweb's request, but he admits he was employed by Connectweb before

1

and after allegedly acquiring the copyrights to CVW, where he worked on the CVW software for Connectweb. Plaintiff worked with J.P. Cooke during his employment with Connectweb to troubleshoot issues that arose from CVW on J.P. Cooke's website.

On January 10, 2022, Plaintiff filed this action against Connectweb, Connectweb's owners, named and unnamed Connectweb clients, including J.P. Cooke, and Defendant Google LLC. Plaintiff's only claim against J.P. Cooke, and Connectweb's other named and unnamed clients, is for direct infringement on the copyrights he now claims to own to CVW. Nevertheless, Plaintiff does not allege a single act of infringement committed by J.P. Cooke; Plaintiff's only allegation of infringement is against Connectweb for publishing the CVW software on its client's websites (of which Plaintiff himself assisted as a Connectweb employee). Instead, Plaintiff's lawsuit is, at its core, merely a dispute against Connectweb over the ownership of the copyrights to CVW and an accounting of the royalties from Connectweb for its use and licensing of CVW to its clients, as either a co-author or licensee, after the date Plaintiff claims he acquired the copyrights to CVW. Yet, without any allegations of direct infringement to support his claims, Plaintiff has frivolously named J.P Cooke, and Connectweb's other clients, in an effort to pressure Connectweb on his claims against it.

Plaintiff's attempt to haul J.P. Cooke into this Court, half-way across the country, will force it to expend substantial resources to defend itself, against a claim for which Plaintiff fails to even identify an underlying act of misconduct by it, and threaten the fourth-generation family-owned and operated corporation's ability to continue its operations. But, in addition to failing to identify any direct infringement by J.P. Cooke, Plaintiff's Complaint also does not contain any factual allegations warranting this Court's exercise of personal jurisdiction under the State of Massachusetts' long arm statue, Mass. Gen. L. ch. 223A, § 3, or the requirements of the Due

Process Clause of the United States Constitution. Plaintiff's conclusory allegation of general jurisdiction is wholly insufficient, and his allegations of specific jurisdiction also fail to tie any wrongful conduct by J.P. Cooke to the State of Massachusetts. Further, the exercise of personal jurisdiction over J.P. Cooke would be contrary to its due process rights. Accordingly, the Complaint should be dismissed against J.P. Cooke for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    LEGAL STANDARD

At the pleading stage, a case must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction if, under the prima facie approach, without an evidentiary hearing, if the Court finds the plaintiff has failed to "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54, 52 (1st Cir. 2020) (*quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (internal quotations and alteration omitted). To make this showing, "the plaintiff cannot rely solely on conclusory averments but must 'adduce evidence of specific facts.'" *Id.* at 54 (*quoting Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)). "The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." *Id.* (*citing Baskin-Robbins*, 825 F.3d at 34).

## III.   FACTUAL BACKGROUND

J.P. Cooke is a corporation organized under the laws of the State of Delaware with its principal place of business in Omaha, Nebraska. (Amend. Compl. ¶ 9). It contracted with Connectweb, a corporation that is organized under the laws of the State of South Carolina and maintains its principal place of business there as well, to host its website and facilitate the sale of its rubber stamps with CVW software. (Amend. Compl. ¶¶ 4, 49). Connectweb developed its

flagship CVW software and began using it to host customer websites by at least 2009 to serve the rubber stamp industry. (*See* Amend. Compl. ¶¶ 49, 61 (explaining that he was able to obtain the records of all custom rubber stamps created between 2009 and 2020 on Connectweb's customer's websites hosted with the CVW software)).

Plaintiff filed his Complaint on January 10, 2022, and filed his First Amended Complaint on May 9, 2022. Plaintiff asserted a claim of direct copyright infringement against J.P. Cooke, but Plaintiff's Complaint fails to identify a single act of infringement committed by J.P. Cooke; instead, it identifies only acts by Connectweb of publishing the version of CVW to which Plaintiff claims to own the copyrights. Amend. (Amend. Compl. ¶ 31). Regarding the same version of CVW Plaintiff asserted his copyright infringement claim against J.P. Cooke on, Plaintiff also asserts claims for declaratory judgment, accounting, and breach of contract against Connectweb regarding ownership of the software and royalties he claims are owed to him for its use and licensing of the software as a co-author or licensee. (Amend. Compl. ¶¶ 1, 69-73).

Plaintiff's allegations demonstrate J.P. Cooke is a small company that has not done any business in the State of Massachusetts. As Plaintiff details, he obtained the records of every custom rubber stamp purchased from J.P. Cooke's website, dating back as far as potentially 2009, but identified only about 4,000 stamps that were created and purchased through its website during that time. (*See* Amend. Compl. ¶¶ 49, 61, 66). Further, despite claiming to have a list of every custom stamp ordered through J.P. Cooke's website, including the customer's personal identifying information, Plaintiff failed to identify a single transaction by a Massachusetts resident in his Complaint. (*See generally id.*)

The sole factual allegation in Plaintiff's Complaint concerning J.P. Cooke's contacts with the State of Massachusetts is that it advertises and "sells products that may only be used by

4

Massachusetts notaries, namely Massachusetts notary seals and stamps." (Amend. Compl. ¶ 19). Apart from the foregoing allegation, Plaintiff merely sets forth conclusory averments that J.P. Cooke regularly and routinely does business in Massachusetts and maintains minimum business contacts in Massachusetts. (*Id.*) The only other connection between J.P. Cooke and Massachusetts that can be gleaned from the Complaint is J.P. Cooke contracted with Connectweb, which was formerly a Massachusetts corporation with its principal place of business in Massachusetts. (Amend. Compl. ¶ 4). However, Plaintiff admits Connectweb moved its operations to the State of South Carolina in 2018. (Amend. Compl. ¶ 36).

## IV.    ARGUMENT

"In the mine-run of federal question cases, Federal Rule of Civil Procedure 4(k)(1) erects the framework for establishing personal jurisdiction by service of process. Under this framework, personal jurisdiction may derive either from a state long-arm statute that sets the boundaries of a state court's jurisdictional reach or from a federal statute permitting nationwide personal jurisdiction by service of process." *Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115, 121-122 (1st Cir. 2022) (citing Fed. R. Civ. P. 4(k)(1)(A); (C)). Plaintiff has not alleged any federal statute permitting nationwide personal jurisdiction applies to confer personal jurisdiction over J.P. Cooke, only Massachusetts' long-arm statute. (*See* Amend. Compl. ¶ 19).

"To establish the existence of in personam jurisdiction, a plaintiff who seeks to hale a defendant into court in a particular forum not only must comply with the forum's long-arm statute but also must show that exercising such jurisdiction will comport with the requirements of due process." *Motus*, 23 F.4th at 122. "The requirements of the Massachusetts long-arm statute are similar to -- although not necessarily the same as -- those imposed by the Due Process Clause." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015). "Although presented

with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites." *Id.* (*quoting Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 80 (Mass. 1979)) (internal quotations omitted).

Accordingly, Plaintiff must first establish personal jurisdiction over J.P. Cooke is appropriate under one of the statutory pre-requisites, and then he must also establish such jurisdiction comports with the requirements of due process.

> **A.** **Plaintiff Failed to Meet His Burden to Show that Massachusetts Courts may Exercise Personal Jurisdiction over J.P. Cooke under the State's Long-Arm Statute.**

Plaintiff failed to show either J.P. Cooke transacted any business in Massachusetts related to Plaintiff's claim against it or that J.P. Cooke regularly conducts business or derives substantial revenue from the state. Mass. Gen. L. ch. 223A, § 3 identifies several potential bases for exercising jurisdiction over non-residents, but Plaintiff has alleged only the following two bases as creating personal jurisdiction over J.P. Cooke:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth; [or]
>
> . . .
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

223A, § 3(a), (d); (*see* Amend. Compl. ¶ 19). However, Plaintiff's allegations fail to show J.P. Cooke's conduct satisfies either of these statutory pre-requisites, so this Court should find that it lacks personal jurisdiction over J.P. Cooke and dismiss Plaintiff's claim against it.

6

### 1. Plaintiff's Allegations Are Insufficient to Satisfy the Statutory Prerequisite in 223A, § 3(a)

Plaintiff's allegations fail to demonstrate his claim against J.P. Cooke arises from any business it conducted there. "To satisfy the two requirements § 3(a), [the plaintiff] must show that 1) [the defendant] transacted business in Massachusetts, and 2) [the plaintiff]'s claim arose from [the defendant] transaction of such business." *eIQnetworks, Inc. v. BHI Advanced Internet Solutions, Inc.*, 726 F. Supp. 2d 26, 30 (D. Mass. 2010) (*citing Roberts v. Legendary Marine Sales*, 447 Mass. 860, 863, 857 N.E.2d 1089, 1091 (2006)). "A defendant's physical presence in the Commonwealth is not necessary to transact business in Massachusetts, rather it is the defendant's attempt to participate in the Commonwealth's economic life that counts." *Id.* (*quoting BCCTC Associates, Inc. v. Summerdale/AAHFI, L.P.*, 656 F. Supp.2d 208, 215 (D. Mass., 2009)) (internal quotations omitted).

"It is not true, however, that any contractual communication into Massachusetts is sufficient to establish personal jurisdiction. In the typical case, the focus is on the contacts relating to the formation of the contract; those contacts ordinarily must be instrumental to its formation to establish jurisdiction." *Id.* (*quoting M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp.2d 269, 275 (D. Mass., 2008)). "Thus, in the case of a typical bilateral contract and a 'passive' purchaser, letters and phone calls into a forum that may accompany an order are viewed as ancillary activity without substantial commercial consequence in the forum." *Id.* (*M-R Logistics*, 537 F. Supp.2d at 275) (internal quotation omitted).

Here, Plaintiff's allegations, construed in his favor, fail to create the necessary nexus between any acts by J.P. Cooke and his infringement claim. Plaintiff alleges J.P. Cooke advertises and "sells products that may only be used by Massachusetts notaries, namely Massachusetts notary seals and stamps." (Amend. Compl. ¶ 19). Plaintiff's allegation regarding

advertising in Massachusetts should be disregarded as it is conclusory and unsupported by any factual allegations.

Regarding the sale of Massachusetts notary seals and stamps, Plaintiff does not show that this is related to his copyright infringement claim. While Plaintiff's allegations regarding what his copyright software covers are, at best vague,, his only specific allegations on the subject suggests it is related to the production of images of custom stamps ordered by customers. (*See* Amend. Compl. ¶ 49). Yet, the Massachusetts notary seals and stamps offered by J.P. Cooke are clearly not custom, as Plaintiff admits they are generally listed for sale on the website (*see* Amend. Compl. ¶ 19), along with those for the other 49 states. Moreover, Plaintiff has not alleged J.P. Cooke has actually sold any Massachusetts notary seals and stamps or any custom stamps to anyone in the State of Massachusetts, despite him claiming to have records of all of J.P. Cooke's 4,000 online sales dating as far back as possibly 2009. (*See* Amend. Compl. ¶¶ 49, 61, 66). Even if Plaintiff could identify a sporadic transaction by a Massachusetts resident in those records, it would still not be enough to confer jurisdiction on this Court. *See Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182, 187 ("neither subsection (a) nor subsection (d) of the long-arm statute extends jurisdiction over an out-of-state defendant who has engaged in a single transaction via the internet with a Massachusetts resident.") (*citing Roberts v. Legendary Marine Sales*, 447 Mass. 860, 863, 857 N.E.2d 1089 (2006)).

Regarding J.P. Cooke's contract with Connectweb, Connectweb became a South Carolina corporation in 2018, more than three years before Plaintiff filed his Complaint alleging copyright infringement on January 10, 2022. "The Copyright Act provides in relevant part that no claim for copyright infringement shall be maintained 'unless it is commenced within three years after the claim accrued.'" *Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008)

8

(*quoting* 17 U.S.C. § 507(b)). "A copyright claim . . . arises or 'accrues' when an infringing act occurs." *Petrella v. MGM*, 572 U.S. 663, 670 (2014). Accordingly, any act of infringement Plaintiff may claim J.P. Cooke committed arising from its contract with Connectweb while it was a Massachusetts company is barred by the statute of limitations and cannot form the basis of his claim or personal jurisdiction over J.P. Cooke..

Thus, 223A, § 3(a) cannot support the exercise of jurisdiction over J.P. Cooke because Plaintiff has not shown that any business it has conducted in Massachusetts form the basis of his claim.

### 2. Plaintiff's Allegations Are Insufficient to Satisfy the Statutory Prerequisite in 223A, § 3(d)

Plaintiff's complaint is devoid of allegations that could support general personal jurisdiction over J.P. Cooke. "Section 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts." *Restuccia v. H&R Block Tax Servs. LLC*, 2021 U.S. Dist. LEXIS 193801, *13 (D. Mass. Oct. 7, 2021) (*citing Pettengill v. Curtis*, 584 F. Supp. 2d 348, 357 (D. Mass. 2008)). Jurisdiction can be established over foreign corporations under the doctrine of general jurisdiction "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Gulf Oil Ltd. P'ship v. Petro. Mktg. Grp.*, 308 F. Supp. 3d 453, 458 (D. Mass. 2018) (*quoting Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[A] corporate defendant is generally 'at home' only in its State of incorporation and the State where it maintains its principal place of business." *Id.* (*quoting BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2016)).

J.P. Cooke is incorporated under the laws of the State of Delaware, and its principal place of business is in Nebraska. Further, Plaintiff has not made any allegations that would establish

9

that J.P. Cooke has any business dealings in the State of Massachusetts, let alone continuous and systematic ones. Accordingly, personal jurisdiction over J.P. Cooke may not be justified under the doctrine of general jurisdiction.

### B. Plaintiff Failed to Meet His Burden to Show that this Court's Exercise of Jurisdiction over J.P. Cooke would not be Contrary to Its Due Process Rights.

Even if Plaintiff could establish specific jurisdiction against J.P. Cooke under 223A, § 3(a), *arguendo*, his allegations do not show that this Court's exercising such over J.P. Cooke would comport with the Due Process Clause. To evaluate whether suit-related conduct creates the necessary minimum contacts with Massachusetts, courts consider the following:

(1) whether the claim 'directly arises out of, or relates to, the defendant's forum state activities;'

(2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;' and

(3) whether the exercise of jurisdiction is reasonable.

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014) (quotation and alterations omitted).

First, as shown in Section IV.A.1, *supra*, Plaintiff has failed to allege facts showing that his claim against J.P. Cooke arises from any actions by J.P. Cooke in Massachusetts. "The relatedness prong requires the plaintiff to show a demonstrable nexus between its claims and the defendant's forum-based activities, such that the litigation itself is founded directly on those activities." *Id.* (quotation and alterations omitted). Accordingly, the relatedness prong weighs against the Court exercising jurisdiction over J.P. Cooke.

Second, Plaintiff has also failed to show J.P. Cooke has had any contact with Massachusetts unrelated to Plaintiff's claims. "The purposeful availment prong represents a

rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior. *Id.* (quotation omitted). This prong "places the emphasis on the defendant's intentions and prohibits jurisdiction based on random, fortuitous, or attenuated contacts." *Id.* (quotation omitted); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 29 (1st Cir. 2008) (emphasizing the absence of solicitation when finding no purposeful availment). Even if Plaintiff could show J.P. Cooke had a couple of orders for products from Massachusetts customers since 2009, such allegations would not raise above random, fortuitous, or attenuated contacts to substantiate purposeful availment.

Third, it is not reasonable to force a small company to defend itself against Plaintiff's frivolous claim over a thousand miles from its principal place of business. The reasonableness prong weighs the following factors, "(1) the defendant's burden of appearing in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *C.W. Downer*, 771 F.3d at 69 (quotation and alterations omitted). "[T]he weaker the plaintiff's showing on the first two prongs . . . the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

Forcing J.P. Cooke to appear in a Massachusetts court will create a significant strain on the small company's ability to function. According to Plaintiff, J.P. Cooke has only made 4,000 online sales since 2009, which demonstrates its limited resources and the unreasonableness of forcing it to defend itself in a jurisdiction half-way across the United States. (*See* Amend. Compl.

¶¶ 49, 61, 66). While Massachusetts has an interest in protecting the rights of its citizen, Plaintiff has not alleged any act of infringement by J.P. Cooke personally to support a claim of direct infringement. Instead, the thrust of Plaintiff's Complaint is an ownership and accounting dispute with Connectweb, who Plaintiff's only allegations of infringement are actually against. (Amend. Compl. ¶¶ 1, 69-73). Accordingly, Massachusetts courts do not have any interest in forcing J.P. Cooke to defend itself from a facially deficient claim. Instead, it is clear from the Complaint that Plaintiff's joinder of Connectweb's clients, including J.P. Cooke, is motivated more by Plaintiff's desire to harass and pressure Connectweb than protect any violation of his rights by them.

Even if, *arguendo*, the reasonableness factor weighed slightly in Plaintiff's favor, it is clear that this Court exercising jurisdiction over small company with limited out-of-state business half-way across the country will create a substantial burden upon J.P. Cooke. As the relatedness and purposeful availment prongs each weigh substantially in J.P. Cooke's favor and the reasonableness claim also weighs against exercising personal jurisdiction, this Court should find the Due Process Clause does not permit the exercise of personal jurisdiction over J.P. Cooke and dismiss Plaintiff's claim against it.

## V.     CONCLUSION

For the reasons discussed above, Plaintiff's claim against J.P. Cooke should be dismissed.

DATED this 7th day of June, 2022.

                                                    THE J.P. COOKE COMPANY,
                                                    Defendant,

                                                    */s/   Elliott M. Loew*
                                                    Elliott M. Loew (BBO No. 303200)
                                                    Elliott M. Loew, P.C.
                                                    343 Washington St., Ste. 200
                                                    Newton, MA 02458
                                                    Telephone: (617) 969-2660
                                                    Fax: (617) 964-8676
                                                    *emlpc@comcast.net*

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the CM/ECF system on June 7, 2022, and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

*/s/   Elliott M. Loew*