UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW POWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 22-10030-JGD |
| CONNECTWEB TECHNOLOGIES, INC., MICHAEL | ) | |
| BEAULIEU, PAUL BEAULIEU, RUBBER STAMP | ) | |
| CHAMP, INC., ANCHOR RUBBER STAMP & | ) | |
| PRINTING CO., INC., THE J.P. COOKE COMPANY | ) | |
| and GOOGLE LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON THE J.P. COOKE COMPANY'S MOTION TO
## DISMISS FOR LACK OF PERSONAL JURISDICTION

January 4, 2023

DEIN, U.S.M.J.

### I.   INTRODUCTION

Plaintiff Matthew Power ("Power"), a resident of Massachusetts, has brought this case

for copyright infringement against his former employer, Connectweb Technologies, Inc.

("Connectweb"); two of Connectweb's officers, Michael Beaulieu ("Michael") and Paul Beaulieu

("Paul"); Google LLC ("Google"); and three of Connectweb's out-of-state customers, Rubber

Stamp Champ, Inc. ("Rubber Stamp"), Anchor Rubber Stamp & Printing Co., Inc. ("Anchor") and

The J.P. Cooke Company ("J.P. Cooke").  The plaintiff alleges that he is the sole owner, or

alternatively, the co-owner, of the copyright to the updated versions of Connectweb's Custom

Vantage Web ("CVW") software because he created a derivative version of CVW while working

for Connectweb as an independent contractor, registered his work with the United States

Copyright Office, and never assigned his rights in the copyright to Connectweb or anyone else.

By his First Amended Complaint, Power is seeking a declaratory judgment regarding his

ownership rights in CVW software, including his rights with respect to any derivative works that

he created while working as an independent contractor.  He is also seeking to hold the

defendants liable for copyright infringement, as well as alleged violations of federal and state

law.

The matter is before the court on "Defendant The J.P. Cooke Company's Motion to

Dismiss For Lack of Personal Jurisdiction" (Docket No. 49).[1]  By its motion, J.P. Cooke contends

that Power's claims against it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the

plaintiff has failed to show that its contacts with Massachusetts are sufficient to enable this

court to exercise personal jurisdiction over it under either the Commonwealth's long-arm

statute or the Due Process Clause of the United States Constitution.  For all the reasons detailed

below, this court finds that Power has failed to meet his "burden of showing that personal

jurisdiction is both statutorily authorized and consistent with the constitutional requirements of

due process."  Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022).

Accordingly, J.P. Cooke's motion to dismiss is ALLOWED.

---

[1] Defendants Rubber Stamp and Anchor have also filed motions to dismiss for lack of personal
jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Those motions will be addressed in separate decisions
issued on this date.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

"[t]he burden of proving that personal jurisdiction may be exercised in the forum state lies

squarely with the plaintiff."  Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st

Cir. 2020).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction

without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its

determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under

this standard, the plaintiff must "demonstrate the existence of every fact required to satisfy

both the forum's long-arm statute and the Due Process Clause of the Constitution."  Id.

(quotations and citations omitted).  "To make such a showing, the plaintiff cannot rely solely on

conclusory averments but must 'adduce evidence of specific facts.'"  Chen, 956 F.3d at 54

(quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

Thus, in order to meet his burden of establishing personal jurisdiction over J.P. Cooke in this

forum, Power must "proffer evidence which, taken at face value, suffices to show all facts

essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825

F.3d 28, 34 (1st Cir. 2016).  The court will "take the facts from the pleadings and whatever

supplemental filings (such as affidavits) are contained in the record, giving credence to the

plaintiff's version of genuinely contested facts."  Id.  It will "then add to the mix facts put

forward by the defendants, to the extent that they are uncontradicted."  N. Laminate Sales, Inc.

v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Daynard v. Ness, Motley, Loadholt, Richardson

& Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (additional quotations and citation omitted).

[3]

Applying this standard to the instant case, the facts relevant to J.P. Cooke's motion to dismiss are as follows.[2]

## The Parties

Power is an individual who resides in Swampscott, Massachusetts.  (Am. Compl. ¶ 2). He operates his own software business, which is organized as a sole proprietorship under his own name.  (Id. ¶ 23).  Power alleges that he "has many common-law copyrights to the various software programs, created mostly between years 2005 and 2020."  (Id.).  He further alleges that he is "a prolific creative genius with copyrighted works in the form of books – the first published at age 11 – artwork, lyrics, music, films, software, poems[,]" and that he has registered copyrights for his works since he was 15 years old.  (Id.).

During the time period from April 2014 to October 2015, Power worked as an employee for defendant Connectweb, apparently as a software developer.  (See id. ¶¶ 23-24). Connectweb is the creator of CVW, a software program that is used to support the rubber stamp industry.  (See id. ¶¶ 26, 49, 92).  Since at least 2009, Connectweb has used CVW to host its customers' websites.  (See id. ¶¶ 49, 61).  At the time of Power's employment, Connectweb was a Massachusetts corporation with a principal place of business in Peabody, Massachusetts. (See id. ¶¶ 4, 36).  However, in 2018, Connectweb moved its office to South Carolina.  (Id. ¶ 36). It is now a South Carolina corporation with a principal place of business in Columbia, South Carolina.  (Id. ¶ 4).

---

[2] Unless otherwise indicated, the facts are derived from the plaintiff's First Amended Complaint ("Am. Compl.") (Docket No. 26) and the exhibits attached thereto ("Am. Compl., Ex. __").

Defendant J.P. Cooke is a Delaware corporation, which has a principal place of business in Omaha, Nebraska, where it produces and sells rubber stamps.  (Id. ¶ 9; Def. Mem. at 1).[3]  It is undisputed that J.P. Cooke entered into a contractual arrangement with Connectweb pursuant to which Connectweb agreed to host J.P. Cooke's website and facilitate the sale of its rubber stamps using CVW software.  (Def. Mem. at 3).  Power alleges that he has been able to uncover data from J.P. Cooke's CVW powered website, which revealed personal identifying information from 4,000 customer transactions.  (See Am. Compl. ¶¶ 49-54, 66).  However, he has not presented evidence, or alleged any facts, linking sales made through the use of CVW to Massachusetts.  Thus, while Power claims that J.P. Cooke "actively advertises products specifically targeting Massachusetts customers," and sells Massachusetts notary seals and stamps "that may only be used by Massachusetts notaries," he had not identified any specific instances in which J.P. Cooke interacted with or sold any of its products to a Massachusetts customer.  (See id. ¶ 19).

### Power's Alleged Development of Derivative Works of CVW

Power claims that in October 2015, Connectweb laid him off from his job at the company after it ran out of funds to pay its employees.  (Id. ¶ 24).  He further alleges that in or about early 2016, he and Michael "tacitly agreed" that Power would create a new, modern version of CVW.  (Id. ¶ 26).  According to Power, the arrangement called for him to develop the new software at his own expense, while working at home on his own schedule using his own tools.  (Id.).  Additionally, Power and Michael allegedly agreed that Connectweb would

---

[3] "Def. Mem." refers to Defendant The J.P. Cooke Company's Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 56).

purchase the end product at a later time if it was completed to Connectweb's satisfaction.  (Id.).

Power maintains that he started the project, but never completed it due to the fact that

"Michael would urgently call him to modify the current version of CVW instead."  (Id.).

Subsequently, in March 2016, Power allegedly entered into a contract with Connectweb

pursuant to which Connectweb authorized Power to create derivative works of CVW by adding

additional code to the pre-existing version of the software.[4]  (Id. ¶¶ 27-29).  Power claims that

he completed the first derivative work of the CVW software over the course of three days,

while working as an independent contractor for Connectweb.  (See id. ¶¶ 26-28).  He also

claims that he obtained copyright protection over his work, as well as over additional derivative

works of CVW.  Thus, as Power alleges in his Amended Complaint:

> [t]he additional software code that Power added to the pre-existing version of
> CVW qualified for copyrightability having easily passed the low bar of being
> Power's original work having a "modicum of creativity" and being expressed by
> Power into a tangible medium.  Copyright protection is granted immediately
> upon an author expressing an idea into a tangible medium.  Since no written
> assignment of copyright had been signed before the work was created or at any
> time after the work was created, all copyright in the derivative work of CVW
> belonged exclusively to Power.  In addition, all other works created by Power
> between April 2016 and at least May 2018 were derivative works based on his
> own derivative work.  He exclusively owns the copyright to each of those works,
> which includes the exclusive right to create further derivative works.  Because
> Power did not relinquish any copyrights to Connectweb, any work created by any
> employee of Connectweb is an unauthorized derivative work based on Power's
> copyrighted work and is infringing.

(Id. ¶ 29).

---

[4] "A derivative work is 'a work based upon one or more preexisting works.'"  Greene v. Ablon, 794 F.3d
133, 152 (1st Cir. 2015) (quoting 17 U.S.C. § 101).  "It 'consists of a contribution of original material to a
pre-existing work so as to recast, transform or adapt the pre-existing work.'"  Id. (quoting Mass.
Museum of Contemp. Art Found., Inc. v. Büchel, 593 F.3d 38, 64-65 (1st Cir. 2010)).

Power asserts that within four weeks after he completed the new software code, Connectweb published Power's "derivative work of CVW containing his additional software" to hundreds of clients' websites without first seeking a license from the plaintiff. (Id. ¶ 31). According to Power, "[t]he mass publishing of Power's software by Connectweb for financial gain was unauthorized, unlawful, and beyond the scope of any implied license." (Id.). Allegedly, however, Michael subsequently "agreed to pay the bare minimum royalty payments in fixed weekly increments due to [Power] from the 50% of Connectweb's earnings from his derivative work of CVW, as a compromise until Connectweb could be solvent enough to pay him his full statutory fees due to co-authors." (Id. ¶ 32). Power claims that Connectweb increased his royalty fees over time, but never paid him his full share of the fees. (Id.).

Sometime thereafter, Power allegedly agreed to work for Connectweb as an independent contractor with responsibility for creating additional modifications to the CVW software. (Id. ¶ 34). During that time, Power used one of Connectweb's computers to complete his projects. (Id. ¶ 35). However, he maintained a separate server at Connectweb's office to store his own work. (Id.). He also installed his preferred software tool, called Git, to handle versioning and source control of the software he developed. (Id.). Power claims that he owns the copyrights to the projects he authored and stored on Connectweb's computer. (See id. ¶ 36).

In 2018, Connectweb moved its business from Massachusetts to South Carolina. (Id.). According to Power, Connectweb expressed a desire to hire Power as an employee and relocate him to South Carolina, but Power asked to work remotely instead. (Id.). The parties agreed and Power became employed as a remote employee of Connectweb, working from his home in

[7]

Massachusetts.  (Id.).  Power alleges that during his employment, which lasted approximately two years, he used his own computer to develop software for Connectweb.  (Id.).  He also alleges that he had remote access to a Connectweb computer on which he claims to have stored his own copyrighted material, "as well as other projects he solely authored and various trade secrets from the time when he was a contractor."  (Id.).

### Power's Dispute with Connectweb

In early December 2020, Power allegedly initiated a conversation with Michael about his royalties because he planned to retire from Connectweb the following month.  (Id.).  According to the plaintiff, Connectweb laid him off from his job three weeks later, on December 21, 2020.  (Id.).  It also cut off his access to the computer containing Power's alleged copyrighted materials and refused to pay Power 50% of the revenue from any software that he co-authored during his work as an independent contractor for Connectweb.  (See id. ¶¶ 36-37).  Prior to the layoff, Connectweb failed to obtain an assignment of copyright or a license from Power.  (Id. ¶ 36).  Moreover, in January 2021, Connectweb allegedly refused to enter into a licensing arrangement that Power proposed, which would have replaced "the 50% share of revenue that Power deserved as a co-author" of CVW software with a payment of "$10 per website per month for use of [Power's] software on any client's website" for as long as the software remained in use.  (Id. ¶ 38).

Following his layoff, Power registered the first of the derivative works of CVW with the United States Copyright Office under Registration Number TXu 2-254-894.  (Id. ¶ 33).  The Registration Certificate shows that the work was completed in 2016, lists Power as its sole author and includes Power's address in Massachusetts.  (Am. Compl., Ex. A).  The registration

was effective as of February 25, 2021, and the date of the registration decision was May 21,

2021.  (Id.).  Power claims that despite his demands for the return of his property from

Connectweb, the company has continued to withhold additional versions of CVW "that belong

exclusively to Power, to prevent him from registering each version under Power's name."  (Am.

Compl. ¶¶ 33, 39).  He also claims that Connectweb has continued to use his software without

authorization, disabled anti-circumvention technology that Power added to the software to

prevent unauthorized use, copying, distribution and publication of his copyrighted work, and

created "at least four unauthorized derivative works of CVW and distributed and publicly

displayed these works on more than 200 websites[.]" (Id. ¶¶ 41-42).  Connectweb has filed

counterclaims against Power in which it alleges, among other things, that it is the exclusive

owner of CVW software, that all contributions Power made to the software were made for the

sole benefit of Connectweb, and that Power's 2021 copyright registration is fraudulent.  (See

Docket No. 52).  By its counterclaims, Connectweb is seeking a declaratory judgment

> declaring that it is the rightful owner of the copyright in the [CVW software], that
> the copyright in the [CVW software] asserted by Mr. Power does not exist and is
> therefore invalid, that the May 21, 2021 purported copyright registration by Mr.
> Power of the [CVW software] is fraudulent, and that Connectweb is not
> infringing, has not infringed, and is not liable for infringing any of Mr. Power's
> purported rights by publishing and distributing any version of the [CVW
> software], including versions marketed as "Custom Vantage Web."

(Id. ¶ 53).  It has also asserted claims against Power for misrepresentation, defamation and

misappropriation of trade secrets.  (Id. at Counts II-VI).

### Power's Allegations Against J.P. Cooke

After allegedly discovering "multiple infringing uses of his copyrighted software

published without his consent," Power began issuing "takedown notices" to various entities

[9]

pursuant to the Digital Millennium Copyright Act ("DMCA").  (Am. Compl. ¶ 39; see also id. ¶¶ 45-46).  He also sent cease and desist letters to a number of Connectweb's clients.  (See id. ¶¶ 40, 43-44).  On December 3, 2021, Power allegedly sent a cease and desist letter to J.P. Cooke in which he instructed the company to stop infringing on his copyrights in CVW software and pay him all outstanding license fees for its use of his copyrighted work.  (Id. ¶ 43).  Power included a copy of his copyright registration with the letter, and gave J.P. Cooke a deadline of December 15, 2021 to comply with his demands.  (Id.).  According to Power, however, J.P. Cooke ignored his warning and failed to respond to his letter.  (Id.).  By his Amended Complaint in this action, Power is seeking to hold J.P. Cooke liable for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et. seq.  (Id. ¶¶ 74-80).

Power contends that he uncovered the extent of the alleged copyright infringement by Connectweb's customers by searching the customers' websites for evidence that they "had created derivative works of Power's software by adding a permanent additional independently copyrightable element to his website software, thereby creating an unauthorized derivative work."  (Id. ¶ 49).  Allegedly, he was able to make this determination because "each custom rubber stamp that was designed by a customer of any CVW website left a permanent record of the design when the customized stamp was ordered, and this design was publicly accessible without need for authentication to view the design."  (Id.).  Power alleges that after downloading images from multiple CVW powered websites, he discovered that the images "contained personally identifiable information for hundreds of thousands of U.S. citizens, and information pertaining to government employees," including, inter alia, "Department of Defense identification numbers for active soldiers, top secret classifications" and "data

pertaining to United States nuclear programs," as well as bank account numbers, credit card numbers, social security numbers and dates of birth.  (Id. ¶ 51).  With respect to J.P. Cooke, Power claims that he was able to upload links to 4,000 images from the company's website that contained customer bank account numbers.  (Id. ¶ 66).  However, he has not alleged any facts linking those accounts to Massachusetts or otherwise indicating that any of the customers reside in Massachusetts.  (See id.).  Moreover, while Power claims that J.P. Cooke "knew about at least one of the data breaches but failed to make timely data breach notifications to customers affected and customers likely affected by the data breaches, as required by various state laws[,]" he has not alleged any facts to show that the incident subjected J.P. Cooke to Massachusetts law.  (See id. ¶ 55).

Additional factual details relevant to this court's analysis are set forth below.

### III.  ANALYSIS

J.P. Cooke has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In order to exercise personal jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause."  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  J.P. Cooke argues that Power has failed to present sufficient facts to satisfy either requirement.  (Def. Mem. at 6-12).  This court agrees for the reasons that follow.

### A.      Personal Jurisdiction Under the Massachusetts Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, "sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant."  Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549, 551

(1994).  J.P. Cooke argues, and Power does not dispute, that only two of those instances – those listed in paragraphs (a) and (d) of the statute -- are relevant to this case.  (See Def. Mem. at 6-10; Pl. Opp. Mem. at 1-3).[5]  Therefore, the court will focus its analysis accordingly.

The relevant portions of the long-arm statute provide as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a)  transacting any business in this commonwealth; [or] ...

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

Mass. Gen. Laws ch. 223A, §§ 3(a) and (d).  In applying these provisions to the instant case, this court is mindful that "the statute is to be construed broadly."  Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65, 70 (D. Mass. 2001).  On the other hand, to satisfy either provision of the long-arm statute, "the plaintiff ... must demonstrate that the defendant has a tangible connection to the forum through commercial or other appreciable contacts with the Commonwealth."  Id. at 70-71.  This court finds that Power has not made the requisite showing.

<u>Section 3(a)</u>

"In order for jurisdiction to exist pursuant to § 3(a), the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business."  Id. at 71 (citing Tatro, 416 Mass. at 767, 625 N.E.2d at 551).  "The 'transacting any business' clause [in §

---

[5] "Pl. Opp. Mem." refers to the Plaintiff's Opposition to the J.P. Cooke Company's Rule 12(b)(2) Motion to Dismiss (Docket No. 58).

3] has been construed broadly.'"  Tatro, 416 Mass. at 767, 625 N.E.2d at 551 (alteration in

original) (quoting Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG, 26 Mass. App.

Ct. 14, 17, 522 N.E.2d 989, 991 (1988)).  Nevertheless, "an isolated (and minor) transaction with

a Massachusetts resident may be insufficient."  Id.  Similarly, "the 'Defendant's awareness of

the location of the plaintiff [in the Commonwealth] is not, on its own, enough to create

personal jurisdiction over a defendant.'"  BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P., 656 F.

Supp. 2d 208, 215 (D. Mass. 2009) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir.

2008)).  Rather, "it is the defendant's 'attempt to participate in the Commonwealth's economic

life' that counts."  Id. (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St.

Corp., 960 F.2d 1080, 1087 (1st Cir. 1992)).  "[G]enerally the purposeful and successful

solicitation of business from residents of the Commonwealth, by a defendant or its agent, will

suffice to satisfy this requirement."  Tatro, 416 Mass. at 767, 625 N.E.2d at 551-52.  This court

concludes that Power has failed to make any such showing.

"[T]he law in Massachusetts is well-established that isolated transactions

unaccompanied by 'purposeful intent' on the part of [a] defendant[ ] and having only a 'slight

effect on the commerce of the Commonwealth' are not enough to support jurisdiction under

subsection (a) of the long-arm statute."  Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc.,

946 F. Supp. 2d 182, 188 (D. Mass. 2012) (quoting Intech, Inc. v. Triple "C" Marine Salvage, Inc.,

444 Mass. 122, 126, 826 N.E.2d 194, 198 (2005)) (additional quotations and citation omitted).

Here, however, Power has presented no evidence to show that J.P. Cooke has successfully sold

any of its products to customers in Massachusetts or generated any revenue from this state.

Although Power claims that he was able to uncover data from J.P. Cooke's website, which

contained bank account information from 4,000 customer transactions, he has not linked any of those accounts to Massachusetts or shown that any of the customers reside in this forum.  (See Am. Compl. ¶ 66).  Accordingly, he has not shown that J.P. Cooke's sales activities had any effect whatsoever "on the commerce of the Commonwealth[.]"  Sun Life Assurance Co. of Canada, 946 F. Supp. 2d at 188 (quoting Intech, Inc., 444 Mass. at 126, 826 N.E.2d at 198) (additional quotations and citation omitted).

Furthermore, Power has not presented any facts to show that J.P. Cooke carries out any advertising or marketing efforts that "specifically target Massachusetts residents" as opposed to residents of multiple states.  See id. (finding that defendants were not transacting business within the meaning of § 3(a) of the long-arm statute where they "[did] not specifically target Massachusetts residents as prospective banking clients.").  For example, he has not explained how J.P. Cooke uses its advertising or the content of its website to solicit business in Massachusetts or engage customers here.  While Power alleges generally that J.P. Cooke "regularly and routinely does business in Massachusetts" and "actively advertises products specifically targeting Massachusetts customers" (Am. Compl. ¶ 19), such conclusory allegations are inadequate to establish that J.P. Cooke acted with a purposeful intent to transact business in the Commonwealth.  See Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (explaining that under the prima facie approach to personal jurisdiction, the plaintiff "may not rely on the mere allegations of [his] complaint, but must point to specific facts in the record that support those allegations." (quoting Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002))).  Therefore, Power has not shown that § 3(a) of the long-arm statute provides a basis for personal jurisdiction in this case.

[14]

To the extent Power claims that J.P. Cooke's contractual arrangement with Connectweb constitutes "transacting business" within the meaning of § 3(a), his claim is unpersuasive.  It is undisputed that at some unidentified point in time, J.P. Cooke entered into an agreement with Connectweb pursuant to which Connectweb agreed to host J.P. Cooke's website using CVW software.  (Def. Mem. at 3).  However, this fact alone is not enough to satisfy the "transacting business" provision of the Massachusetts long-arm statute.  As another court in this district has explained,

> [i]t is not true ... that any contractual communication into Massachusetts is sufficient to establish personal jurisdiction.  In the typical case, the focus is on the contacts relating to the formation of the contract; those contacts ordinarily must be instrumental to its formation to establish jurisdiction.  Thus, in the case of a typical bilateral contract and a "passive" purchaser, letters and phone calls into a forum that may accompany an order "are viewed as ancillary activity without substantial commercial consequence in the forum."  *Little, Brown and Co. (Inc.) v. Bourne*, 493 F. Supp. 544, 547 (D. Mass. 1980); *cf. Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 10-11, 389 N.E.2d 76 (1979).

EIQnetworks, Inc. v. BHI Advanced Internet Sols., Inc., 726 F. Supp. 2d 26, 31 (D. Mass. 2010) (footnote omitted).  Here, Power has not alleged any facts relating to the contractual arrangement between J.P. Cooke and Connectweb.  He has not provided any allegations as to when the contract was formed, how it was formed, or the nature of any communications between J.P. Cooke and Connectweb.  Moreover, he has not described Connectweb's role in hosting its clients' websites, and what if any contact its clients have with Massachusetts.  Therefore, he has not shown that J.P. Cooke's relationship with Connectweb is sufficient to subject it to personal jurisdiction in Massachusetts under § 3(a) of the long-arm statute.

Section 3(d)

The remaining basis for personal jurisdiction under the Massachusetts long-arm statute is equally unavailing for Power.  Section 3(d) of the statute "is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts."  Restuccia v. H&R Block Tax Servs. LLC, No. 21-cv-10604-ADB, 2021 WL 4658734, at *5 (D. Mass. Oct. 7, 2021), and cases cited.  "General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'"  Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).  Thus, a court may assert general jurisdiction over an out-of-state corporation only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S. Ct. 154, 159, 90 L. Ed. 95 (1945)).  Power has not shown, or even alleged, sufficient facts to satisfy this standard.

The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there."  Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014).  "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  Id. (quotations, punctuation and citations omitted).  In addition, the Supreme Court has left open "the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so

[16]

substantial and of such a nature as to render the corporation at home in that State." Id. at 139

n.19, 134 S. Ct. at 761 n.19 (internal citation omitted).  Even if this court were to accept all of

Power's unverified and unsupported allegations as true, there is no basis for a finding of

general personal jurisdiction over J.P. Cooke in this case.

As alleged in the Amended Complaint, J.P. Cooke is a Delaware corporation having its

principal place of business in Omaha, Nebraska.  (Am. Compl. ¶ 9).  Therefore, the defendant is

considered "at home" in those states for purposes of general jurisdiction.  See Chen, 956 F.3d

at 57 (explaining that "[t]he paradigmatic examples of locales in which a defendant corporation

is considered at home are its state of incorporation and the state that houses its principal place

of business.").  On the other hand, there is no evidence showing that J.P. Cooke has conducted

activities – much less substantial activities— in Massachusetts.  The record establishes that the

only links between J.P. Cooke and Massachusetts are the contractual arrangement under which

Connectweb, a Massachusetts company, agreed to host J.P. Cooke's website and the ability of

Massachusetts residents to access the defendant's website.  (See Def. Mem. at 3).  However,

these facts are far from sufficient to justify the court's assertion of general jurisdiction over the

defendant. See Chen, 956 F.3d at 57-58 (concluding that maintenance of a website and online

learning platform that were accessible in Massachusetts and served Massachusetts-based

students was insufficient to support a finding that defendant's contacts with Massachusetts,

"whether viewed singly or in the aggregate, constitute a pattern of general business operations

so unusually substantial as to render [the defendant] 'essentially at home' in the

Commonwealth." (quoting BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 137 S. Ct. 1549, 1558, 198 L. Ed.

2d 36 (2017))); Cossaboon, 600 F.3d at 33-38 (finding no general jurisdiction where defendant

advertised its services in the forum, operated a website accessible to residents of the forum, was registered to do business and employed one person in the forum, entered into a contract with a resident of the forum, and provided medical treatment to forum residents). Accordingly, Power has not shown that the long-arm statute authorizes personal jurisdiction over J.P. Cooke in Massachusetts.

### B.   Personal Jurisdiction Under the Due Process Clause

Even if Power had satisfied the requirements of the long-arm statute, he would still be required to meet his burden of establishing personal jurisdiction over J.P. Cooke under the Due Process Clause of the Fourteenth Amendment. J.P. Cooke argues that Power's allegations are insufficient to show that this court's exercise of personal jurisdiction over it would comport with due process. (Def. Mem. at 10). This court agrees that Power has failed to meet his burden on this issue as well.

"The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Chen, 956 F.3d at 54-55 (alteration in original) (quoting Int'l Shoe Co., 326 U.S. at 316, 66 S. Ct. at 158) (additional quotations and citation omitted). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction [under the Due Process Clause] concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad., 196 F.3d at 288. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480

[18]

U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (punctuation and emphasis in original) (quotations and citations omitted).

For purposes of the constitutional analysis, "[p]ersonal jurisdiction may be either general or specific." Cossaboon, 600 F.3d at 31.  As this court has described above, J.P. Cooke is not subject to general jurisdiction in this forum.  Therefore, this court turns to the specific jurisdiction analysis.

As the First Circuit has explained,

[t]he Due Process Clause imposes three requirements for exercising specific jurisdiction over out-of-forum defendants.  First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum.  See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).  Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." Id.  Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances.  See id.  "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." Id.

Chen, 956 F.3d at 59.  "In cases involving interactions through a website that is operated from outside the forum state but that residents in that state can access, the focus of the analysis has been on the 'purposeful availment' requirement." Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107, 111 (D. Mass. 2014).  This is due to the fact that in such cases, "the 'purposeful availment' element often proves dispositive." Motus, 23 F.4th at 124 ("In website cases, we have recognized that the 'purposeful availment' element often proves dispositive.").  In the instant case, this court finds that Power has failed to establish that J.P. Cooke purposely availed itself of the privilege of conducting business activities in Massachusetts.  Therefore, he has not shown that this court's exercise of personal jurisdiction over that defendant would

comply with due process and it is not necessary to address the relatedness or reasonableness
components of the constitutional analysis.

Purposeful Availment

Purposeful availment occurs "when a defendant deliberately targets its behavior toward
the society or economy of a particular forum, [such that] the forum should have the power to
subject the defendant to judgment regarding that behavior." Carreras v. PMG Collins, LLC, 660
F.3d 549, 555 (1st Cir. 2011). This "requirement guarantees that a defendant will not be
subjected to the exercise of jurisdiction based solely on 'random, isolated or fortuitous'
contacts with the forum state." Baskin-Robbins, 825 F.3d at 36 (quoting Adelson v. Hananel,
510 U.S. 43, 50 (1st Cir. 2007)). It further "ensures that a defendant will not be swept within a
state's jurisdictional reach due solely to the 'unilateral activity of another party or a third
person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183,
85 L. Ed. 2d 528 (1985)) (additional citation omitted). "[T]he two cornerstones of purposeful
availment are voluntariness and foreseeability." Chen, 956 F.3d at 59 (quotations and citations
omitted). "[V]oluntariness demands that the defendant's contacts with the forum result
proximately from its own actions." Id. Foreseeability requires that "the defendant's conduct
and connection with the forum State [must be] such that he should reasonably anticipate being
hauled into court there." Id. (quoting Burger King, 471 U.S. at 474, 105 S. Ct. at 2183)
(alteration in original).

The First Circuit has considered whether an interactive website, located outside the
forum state and directed at residents of every state is alone sufficient to establish purposeful
availment. See Chen, 956 F.3d at 60 (considering "whether a finding of purposeful availment

[20]

sufficient to warrant the exercise of specific jurisdiction can be sustained on the basis of a

defendant's maintenance of a highly interactive website available in the forum and allegedly

accessed by the plaintiff there, even though no accompanying evidence shows that the website

either specifically targets the forum or has resulted in the defendant's knowing receipt of

substantial revenue from forum residents."); <u>Motus</u>, 23 F.4th at 120-21, 125-26 (considering

whether plaintiff established purposeful availment based on defendant's use of website to

market itself and interact with customers in Massachusetts and elsewhere in the United

States).  The First Circuit has held that the availability of such a website, without more, is not

enough "to render a defendant susceptible to jurisdiction in a particular forum." <u>Motus</u>, 23

F.4th at 125.  <u>See also Chen</u>, 956 F.3d at 60 (concluding that defendant "cannot be subjected to

specific jurisdiction in Massachusetts based on its maintenance of an online learning platform

accessible in (and allegedly accessed by [plaintiff] from) the Commonwealth.").  As the First

Circuit has emphasized, "'[o]therwise, the universality of websites in the modern world would

overwhelm constitutional limitations' and render website operators amenable to suit anywhere

within the vast reach of the internet." <u>Motus</u>, 23 F.4th at 125 (quoting <u>Chen</u>, 956 F.3d at 60).

Accordingly, "[t]o establish specific jurisdiction, there must be more." <u>Id.</u>

<u>Power's Inability to Show Purposeful Availment</u>

This court finds that Power has not presented evidence of something "more" in this

case.  "When assessing whether a defendant's commercial operation of a website amounts to

purposeful availment, [courts] typically look to factors such as evidence of specific targeting of

forum residents and evidence that the website has generated 'substantial revenue from forum

residents.'" <u>Id.</u> (quoting <u>Chen</u>, 956 F.3d at 60).  Here, however, Power "has adduced no such

[21]

evidence." Id.  As an initial matter, Power has not presented anything more than the unverified

allegations of his complaint to support an assertion of purposeful availment with respect to J.P.

Cooke.  As this court has described above, this is inadequate to make the requisite showing.

See Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001) (explaining that even under the prima

facie standard, the plaintiff "must verify the facts alleged through materials of evidentiary

quality.").  Furthermore, although Power has alleged generally that J.P. Cooke "actively

advertises products specifically targeting Massachusetts customers" and sells products "that

may only be used by Massachusetts notaries, namely Massachusetts notary seals and stamps"

(Am. Compl. ¶ 19), he not alleged any facts regarding the content of the advertising and has not

specified how the defendant "has sought to serve Massachusetts residents in particular" rather

than residents of many or even all fifty states.  Motus, 23 F.4th at 125.  Nor has he alleged facts

showing that J.P. Cooke has successfully sold products to customers in Massachusetts or

generated any revenue from the forum.  While Power claims that he was able to access

personal information relating to 4,000 of J.P. Cooke's customers, he has not identified any of

those customers as residents of Massachusetts.  (See Am. Compl. ¶¶ 50-51, 66).  The alleged

fact that J.P. Cooke advertises and sells products for use by Massachusetts notaries does

nothing to explain what, if any, commercial links it may have to Massachusetts.  "Jurisdiction

cannot be premised on guesswork, and the record does not support a finding that the

operation of [J.P. Cooke's] website ... constitute[s] purposeful availment with respect to

Massachusetts."  Motus, 23 F.4th at 125.

    In his opposition to J.P. Cooke's motion to dismiss, Power argues that J.P. Cooke

maintained a continuous relationship with Connectweb from 2002 through the end of 2017,

[22]

when Connectweb ceased operations in Massachusetts in preparation for its move to South

Carolina.  (Pl. Opp. Mem. ¶ 1).  He also argues that throughout that time period, J.P. Cooke's

website was hosted on a server that was physically located in the Commonwealth.  (Id. ¶ 2).  To

the extent Power is claiming that these facts support a finding of purposeful availment, his

arguments lack merit.  As an initial matter, Power has not presented any evidence or alleged

any facts regarding the nature or extent of J.P. Cooke's contractual arrangement with

Connectweb, or substantiating its reliance on a server that was located in Massachusetts.

Therefore, the record contains no factual support for his assertions.  Moreover, while it is

undisputed that J.P. Cooke entered into a contract with Connectweb under which Connectweb

agreed to host J.P. Cooke's website (Def. Mem. at 3), the mere existence of a contractual

relationship with an entity that is located in the forum state is not sufficient to establish

purposeful availment.  See, e.g., Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5-6 (1st

Cir. 2016) (finding no purposeful availment in breach of contract action by Massachusetts

company that provided internet services to Jamaican resort operator where defendant

accepted equipment and services from plaintiff but there was no evidence that defendant's

contacts with Massachusetts went "beyond the insubstantial contacts that anyone would have

when buying goods and services from a company that itself happens to be in Massachusetts.");

Phillips, 530 F.3d at 28-29 (finding no purposeful availment in contract dispute based on

defendant's actions in mailing a contract to Massachusetts for plaintiff's signature and sending

several follow-up communications to plaintiff in the forum state).

Power also argues that the purposeful availment prong of the due process test is

satisfied as a result of J.P. Cooke's failure to comply with certain Massachusetts laws.  (Pl. Opp.

Mem. ¶¶ 3, 5-6).  In particular, Power argues that J.P. Cooke "has availed itself of Massachusetts law and a Massachusetts Court can haul [J.P. Cooke] into this State to face fines, penalties, imprisonment, and repayment of back taxes" due to its failure to pay sales and use tax on the software that it leased from Connectweb.  (Id. ¶ 3).  He also asserts that J.P. Cooke "made itself liable to be hauled into Court in Massachusetts" because it "did not properly oversee the sale of notary stamps to _only_ those legally allowed to act as notary publics in Massachusetts," in violation of Mass. Gen. Laws ch. 222, § 18.  (Id. ¶ 5 (emphasis in original)).  Additionally, Power contends that J.P. Cooke has "availed itself of jurisdiction in Massachusetts" by failing to notify its customers of ongoing data breaches, in violation of Mass. Gen. Laws ch. 93H and 201 Mass. Code Regs. § 17.0.  (Id. ¶ 6).

These arguments are unavailing for several reasons.  First, contacts relevant to the specific jurisdiction analysis must be related to the cause of action.  See Copia Commc'ns, 812 F.3d at 5 (explaining that contacts are not relevant to the specific jurisdiction analysis unless claims arise out of or relate to those contacts).  The asserted violations of state law are unrelated to Power's claim for copyright infringement against J.P. Cooke.  Furthermore, the purposeful availment prong of the test for specific personal jurisdiction asks whether the defendant purposefully availed itself "of the privilege of _conducting business_ in the forum[.]" Motus, 23 F.4th at 124 (emphasis added).  Power's contentions that J.P. Cooke paid no sales or use taxes to Massachusetts during the time period between 2002 and the end of 2017, did not monitor the identity of individuals who may have purchased Massachusetts notary stamps to insure that they were "legally allowed to act as notary publics in Massachusetts," and did not notify customers of data breaches in accordance with Massachusetts law and regulations

[24]

undermine, rather than support, any conclusion that the defendant purposefully availed itself of the privilege of conducting business in Massachusetts.  In any event, the record contains no support for Power's arguments regarding J.P. Cooke's alleged state law violations.  In particular, Power has not alleged any facts to suggest that J.P. Cooke was responsible for paying taxes to Massachusetts at any point during the time period from 2002 to 2017, or that it had even entered into a contract with Connectweb when Connectweb was operating in the Commonwealth.  Accordingly, there is no basis for his claim that J.P. Cooke violated Massachusetts law by failing to pay sales and use taxes.  Similarly, Power has not alleged any facts showing that J.P. Cooke sold any products to customers located in Massachusetts.  Consequently, there is no basis for his assertion that the company was obligated but failed to comply with any Massachusetts law pertaining to sales of stamps to notary publics.  Nor is there any basis for his assertion that J.P. Cooke had an obligation to notify customers of data breaches under Massachusetts law.  Therefore, Power's arguments are not sufficient to withstand J.P. Cooke's challenge to personal jurisdiction, and the motion to dismiss must be allowed.

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, this court finds that the plaintiff has failed to make a prima facie showing that J.P. Cooke has sufficient contacts with Massachusetts to support this court's assertion of personal jurisdiction over it.  Therefore, "Defendant The J.P. Cooke Company's Motion to Dismiss For Lack of Personal Jurisdiction" (Docket No. 49) is ALLOWED.

/ s / Judith Gail Dein_____
Judith Gail Dein
United States Magistrate Judge