UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| MATTHEW POWER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | CIVIL ACTION | |
| | ) | NO. 22-10030-JGD | |
| CONNECTWEB TECHNOLOGIES, INC., MICHAEL | ) | | |
| BEAULIEU, PAUL BEAULIEU, RUBBER STAMP | ) | | |
| CHAMP, INC., ANCHOR RUBBER STAMP & | ) | | |
| PRINTING CO., INC., THE J.P. COOKE COMPANY | ) | | |
| and GOOGLE LLC, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OF DECISION AND ORDER ON
## <u>DEFENDANT RUBBER STAMP CHAMP, INC.'S MOTION TO DISMISS</u>

January 4, 2023

DEIN, U.S.M.J.

## I.   <u>INTRODUCTION</u>

Plaintiff Matthew Power ("Power"), a resident of Massachusetts, has brought this case

for copyright infringement against his former employer, Connectweb Technologies, Inc.

("Connectweb"); two of Connectweb's officers, Michael Beaulieu ("Michael") and Paul Beaulieu

("Paul"); Google LLC ("Google"); and three of Connectweb's out-of-state customers, Rubber

Stamp Champ, Inc. ("Rubber Stamp"), Anchor Rubber Stamp & Printing Co., Inc. ("Anchor") and

The J.P. Cooke Company ("J.P. Cooke").  The plaintiff alleges that he is the sole owner, or

alternatively, the co-owner, of the copyright to the updated versions of Connectweb's Custom

Vantage Web ("CVW") software because he created a derivative version of CVW while working

for Connectweb as an independent contractor, registered his work with the United States

Copyright Office, and never assigned his rights in the copyright to Connectweb or anyone else.

By his First Amended Complaint, Power is seeking a declaratory judgment regarding his

ownership rights in CVW software, including his rights with respect to any derivative works that

he created while working as an independent contractor.  He is also seeking to hold the

defendants liable for copyright infringement, as well as alleged violations of federal and state

law.

        The matter is before the court on "Defendant Rubber Stamp Champ, Inc.'s Motion to

Dismiss" (Docket No. 53).  By its motion, Rubber Stamp contends that Power's claims against it

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the plaintiff has failed to show

that its contacts with Massachusetts are sufficient to enable this court to exercise personal

jurisdiction over it under the United States Constitution.[1]  For all the reasons detailed below,

this court finds that Power has met his "burden of showing that personal jurisdiction is ...

consistent with the constitutional requirements of due process."  Motus, LLC v. CarData

Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022).  Therefore, Rubber Stamp's motion to

dismiss is DENIED.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

        On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

"[t]he burden of proving that personal jurisdiction may be exercised in the forum state lies

---

[1] Defendants Anchor and J.P. Cooke have also filed motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Those motions will be addressed in separate decisions issued on this date.

squarely with the plaintiff." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. "To make such a showing, the plaintiff cannot rely solely on conclusory averments but must 'adduce evidence of specific facts.'" Chen, 956 F.3d at 54 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). Thus, for Power to meet his burden of establishing personal jurisdiction over Rubber Stamp in this forum, he must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The court will "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Id. It will "then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (additional quotations and citation omitted). Applying this standard to the instant case, the facts relevant to Rubber Stamp's motion to dismiss are as follows.[2]

---

[2] Unless otherwise indicated, the facts are derived from the plaintiff's First Amended Complaint ("Am. Compl.") (Docket No. 26), including the exhibits attached thereto ("Am. Compl., Ex. __"), and from the Declaration of Michael Roozen ("Roozen Decl."), which is attached to Defendant Rubber Stamp Champ, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss ("Def. Mem.") (Docket No. 54).

**The Parties**

Power is an individual who resides in Swampscott, Massachusetts.  (Am. Compl. ¶ 2).
He operates his own software business, which is organized as a sole proprietorship under his
own name.  (Id. ¶ 23).  Power alleges that he "has many common-law copyrights to the various
software programs, created mostly between years 2005 and 2020."  (Id.).  He further alleges
that he is "a prolific creative genius with copyrighted works in the form of books – the first
published at age 11 – artwork, lyrics, music, films, software, poems[,]" and that he has
registered copyrights for his works since he was 15 years old.  (Id.).

During the time period from April 2014 to October 2015, Power worked as an employee
for defendant Connectweb, apparently as a software developer.  (See id. ¶¶ 23-24).
Connectweb is the creator of CVW, a software program that is used to support the rubber
stamp industry.  (See id. ¶¶ 26, 49, 92).  Since at least 2009, Connectweb has used CVW to host
its customers' websites.  (See id. ¶¶ 49, 61).  At the time of Power's employment, Connectweb
was a Massachusetts corporation with a principal place of business in Peabody, Massachusetts.
(See id. ¶¶ 4, 36).  However, in 2018, Connectweb moved its office to South Carolina.  (Id. ¶ 36).
It is now a South Carolina corporation with a principal place of business in Columbia, South
Carolina.  (Id. ¶ 4).

Although it has been named "Rubber Stamp Champ, Inc." in Power's First Amended
Complaint, Rubber Stamp is a sole proprietorship, which is owned by Michael Roozen and is
formally known as "Michael J. Roozen, doing business as Rubber Stamp & Button Champ."
(Roozen Decl. ¶ 1).  Mr. Roozen resides in California.  (Id.).  Rubber Stamp's headquarters and
principal place of business is located in San Marcos, California.  (Id. ¶ 3).  Power alleges that

Rubber Stamp is a client of Connectweb and relies on CVW software to power its website. (See Am. Compl. ¶¶ 31, 39-41). He also alleges that Rubber Stamp "sells products that may only be used by Massachusetts notaries, namely Massachusetts notary seals and stamps[,]" and that since about 2016, the company "has sold products to at least 7,400 customers in Massachusetts totaling more than $345,000.00 in sales[.]" (Id. ¶ 18). While Rubber Stamp does not dispute these allegations, it has presented evidence showing that it sells products to customers in all 50 states, purchases no advertising in Massachusetts, and that its annual sales to Massachusetts residents "are on par with its sales to customers in states with similar population sizes." (Roozen Decl. ¶¶ 5, 15).

The record demonstrates that Rubber Stamp has no physical presence in the Commonwealth. (Roozen Decl. ¶ 4). In particular, the record shows that Rubber Stamp has no offices, employees, agents or bank accounts here, has no assets in Massachusetts, and leases no property in the forum state. (Id. ¶¶ 9, 12, 14). It further establishes that the defendant is not registered with the Massachusetts Secretary of State, has no registered agent for service of process in Massachusetts, has no telephone listings or mailing addresses here, and is not subject to property tax in Massachusetts. (Id. ¶¶ 7-8, 10, 11, 13). Moreover, Rubber Stamp has presented evidence showing that it has never entered into an agreement with Power, and that it has never commenced suit or been sued in the federal or state courts of Massachusetts prior to the commencement of the instant litigation. (Id. ¶¶ 6, 16). However, Rubber Stamp does

not dispute that its website is accessible in Massachusetts and enables Massachusetts residents to purchase its products.[3]  (See id. ¶¶ 4-5; Am. Compl. ¶¶ 18, 39-41).

### Power's Alleged Development of Derivative Works of CVW

Power claims that in October 2015, Connectweb laid him off from his job at the company after it ran out of funds to pay its employees.  (Am. Compl. ¶ 24).  He further alleges that in or about early 2016, he and Michael "tacitly agreed" that Power would create a new, modern version of CVW.  (Id. ¶ 26).  According to Power, the arrangement called for him to develop the new software at his own expense, while working at home on his own schedule using his own tools.  (Id.).  Additionally, Power and Michael allegedly agreed that Connectweb would purchase the end product at a later time if it was completed to Connectweb's satisfaction.  (Id.).  Power maintains that he started the project, but never completed it due to the fact that "Michael would urgently call him to modify the current version of CVW instead." (Id.).

Subsequently, in March 2016, Power allegedly entered into a contract with Connectweb pursuant to which Connectweb authorized Power to create derivative works of CVW by adding

---

[3] Although Power's allegations against Rubber Stamp are somewhat lacking in clarity, the record supports the conclusion that Rubber Stamp's sales to its Massachusetts customers occurred through its CVW-powered website.  Thus, the undisputed facts establish that while Rubber Stamp has no physical presence in Massachusetts, it maintains a website that is hosted by Connectweb using CVW software and is accessible in all 50 states, including Massachusetts.  (See Roozen Decl. ¶¶ 4-5; Am. Compl. ¶¶ 31, 40, 50, 53-54, 61, 75-77).  Additionally, Rubber Stamp does not dispute Power's claim that it has sold products through its website to "at least 7,400 customers in Massachusetts totaling more than $345,000.00 in sales[.]"  (See Am. Compl. ¶ 18; Roozen Decl. ¶¶ 4-5).

additional code to the pre-existing version of the software.[4]  (Id. ¶¶ 27-29).  Power claims that

he completed the first derivative work of the CVW software over the course of three days,

while working as an independent contractor for Connectweb.  (See id. ¶¶ 26-28).  He also

claims that he obtained copyright protection over his work, as well as over additional derivative

works of CVW.  Thus, as Power alleges in his Amended Complaint:

> [t]he additional software code that Power added to the pre-existing version of
> CVW qualified for copyrightability having easily passed the low bar of being
> Power's original work having a "modicum of creativity" and being expressed by
> Power into a tangible medium.  Copyright protection is granted immediately
> upon an author expressing an idea into a tangible medium.  Since no written
> assignment of copyright had been signed before the work was created or at any
> time after the work was created, all copyright in the derivative work of CVW
> belonged exclusively to Power.  In addition, all other works created by Power
> between April 2016 and at least May 2018 were derivative works based on his
> own derivative work.  He exclusively owns the copyright to each of those works,
> which includes the exclusive right to create further derivative works.  Because
> Power did not relinquish any copyrights to Connectweb, any work created by any
> employee of Connectweb is an unauthorized derivative work based on Power's
> copyrighted work and is infringing.

(Id. ¶ 29).

Power asserts that within four weeks after he completed the new software code,

Connectweb published Power's "derivative work of CVW containing his additional software" to

hundreds of clients' websites without first seeking a license from the plaintiff.  (Id. ¶ 31).

According to Power, "[t]he mass publishing of Power's software by Connectweb for financial

gain was unauthorized, unlawful, and beyond the scope of any implied license."  (Id.).

Allegedly, however, Michael subsequently "agreed to pay the bare minimum royalty payments

---

[4] "A derivative work is 'a work based upon one or more preexisting works.'"  Green v. Ablon, 794 F.3d
133, 152 (1st Cir. 2015) (quoting 17 U.S.C. § 101).  "It 'consists of a contribution of original material to a
pre-existing work so as to recast, transform or adapt the pre-existing work.'"  Id. (quoting Mass.
Museum of Contemp. Art Found., Inc. v. Büchel, 593 F.3d 38, 64-65 (1st Cir. 2010)).

in fixed weekly increments due to [Power] from the 50% of Connectweb's earnings from his derivative work of CVW, as a compromise until Connectweb could be solvent enough to pay him his full statutory fees due to co-authors." (Id. ¶ 32).  Power claims that Connectweb increased his royalty fees over time, but never paid him his full share of the fees.  (Id.).

Sometime thereafter, Power allegedly agreed to work for Connectweb as an independent contractor with responsibility for creating additional modifications to the CVW software.  (Id. ¶ 34).  During that time, Power used one of Connectweb's computers to complete his projects.  (Id. ¶ 35).  However, he maintained a separate server at Connectweb's office to store his own work.  (Id.).  He also installed his preferred software tool, called Git, to handle versioning and source control of the software he developed.  (Id.).  Power claims that he owned the copyrights to the projects he authored and stored on Connectweb's computer.  (See id. ¶ 36).

In 2018, Connectweb moved its business from Massachusetts to South Carolina.  (Id.). According to Power, Connectweb expressed a desire to hire Power as an employee and relocate him to South Carolina, but Power asked to work remotely instead.  (Id.).  The parties agreed and Power became employed as a remote employee of Connectweb, working from his home in Massachusetts.  (Id.).  Power alleges that during his employment, which lasted approximately two years, he used his own computer to develop software for Connectweb.  (Id.).  He also alleges that he had remote access to a Connectweb computer on which he claims to have stored his own copyrighted material, "as well as other projects he solely authored and various trade secrets from the time when he was a contractor."  (Id.).

[8]

**Power's Dispute with Connectweb**

In early December 2020, Power allegedly initiated a conversation with Michael about his royalties because he planned to retire from Connectweb the following month.  (Id.).  According to the plaintiff, Connectweb laid him off from his job three weeks later, on December 21, 2020.  (Id.).  It also cut off his access to the computer containing Power's alleged copyrighted materials and refused to pay Power 50% of the revenue from any software that he co-authored during his work as an independent contractor for Connectweb.  (See id. ¶¶ 36-37).  Prior to the layoff, Connectweb failed to obtain an assignment of copyright or a license from Power.  (Id. ¶ 36).  Moreover, in January 2021, Connectweb allegedly refused to enter into a licensing arrangement that Power proposed, which would have replaced "the 50% share of revenue that Power deserved as a co-author" of the CVW software with a payment of "$10 per website per month for use of [Power's] software on any client's website" for as long as the software remained in use.  (Id. ¶ 38).

Following his layoff, Power registered the first of the derivative works of CVW with the United States Copyright Office under Registration Number TXu 2-254-894.  (Id. ¶ 33).  The Registration Certificate shows that the work was completed in 2016, lists Power as its sole author and includes Power's address in Massachusetts.  (Am. Compl., Ex. A).  The registration was effective as of February 25, 2021, and the date of the registration decision was May 21, 2021.  (Id.).  Power claims that despite his demands for the return of his property from Connectweb, the company has continued to withhold additional versions of CVW "that belong exclusively to Power, to prevent him from registering each version under Power's name."  (Am. Compl. ¶¶ 33, 39).  He also claims that Connectweb has continued to use his software without

authorization, disabled anti-circumvention technology that Power added to the software to

prevent unauthorized use, copying, distribution and publication of his copyrighted work, and

created "at least four unauthorized derivative works of CVW and distributed and publicly

displayed these works on more than 200 websites[.]" (Id. ¶¶ 41-42).  Connectweb has filed

counterclaims against Power in which it alleges, among other things, that it is the exclusive

owner of CVW software, that all contributions Power made to the software were made for the

sole benefit of Connectweb, and that Power's 2021 copyright registration is fraudulent.  (See

Docket No. 52).  By its counterclaims, Connectweb is seeking a declaratory judgment

> declaring that it is the rightful owner of the copyright in the [CVW software], that
> the copyright in the [CVW software] asserted by Mr. Power does not exist and is
> therefore invalid, that the May 21, 2021 purported copyright registration by Mr.
> Power of the [CVW software] is fraudulent, and that Connectweb is not
> infringing, has not infringed, and is not liable for infringing any of Mr. Power's
> purported rights by publishing and distributing any version of the [CVW
> software], including versions marketed as "Custom Vantage Web."

(Id. ¶ 53).  It has also asserted claims against Power for misrepresentation, defamation and

misappropriation of trade secrets.  (Id. at Counts II-VI).

### Power's Allegations Against Rubber Stamp

After allegedly discovering "multiple infringing uses of his copyrighted software

published without his consent," Power began issuing "takedown notices" to various entities

pursuant to the Digital Millennium Copyright Act ("DMCA").  (Am. Compl. ¶ 39; see also id. ¶¶

45-46).  He also sent cease and desist letters to a number of Connectweb's clients.  (See id. ¶¶

40, 43-44).  On November 15, 2021, Power allegedly sent a cease and desist letter by email to

Rubber Stamp in which he informed the company of his ownership and authorship of CVW, his

registration of the software with the United States Copyright Office, and his issuance of DMCA

notices.  (Id. ¶ 40).  He also demanded that Rubber Stamp stop infringing on his copyrights in

CVW software and pay him $1.4 million in licensing fees for its use of his copyrighted work.

(Id.).  Power allegedly gave the defendant a deadline of November 19, 2021 to comply with his

demands.  (Id.).  According to Power, however, Rubber Stamp ignored his warning and failed to

respond to his email.  (Id.).

      Power claims, "[u]pon information and belief," that Rubber Stamp subsequently

conspired with Connectweb "to ban any Internet Protocol ('IP') address[es] used by Power."

(Id. ¶ 41).  According to Power, he had been using IP addresses to send out cease and desist

letters via email to alleged infringers of his copyright.  (Id.).  Allegedly, however, the

defendants' actions in banning Power's IP addresses prevented the plaintiff from viewing any

infringing websites and rendered any emails he attempted to send from his IP address to an

alleged infringer undeliverable.  (Id.).  Power contends that as a result of the ban, Rubber Stamp

and Connectweb continued "to receive millions of dollars of unjust enrichment through use of

his software without authorization," interfered with his rights under the DMCA and Computer

Fraud and Abuse Act, violated Power's licensing agreements for CVW, and otherwise caused

him harm.  (Id.).  By his First Amended Complaint in this action, Power is seeking to hold Rubber

Stamp liable for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et.

seq., as well as for conspiracy to commit copyright infringement by working with Connectweb

to invent "a scheme to hide infringing uses [of CVW] from the Plaintiff and to thwart Plaintiff's

right to take down infringing content through DMCA Orders."  (Id. ¶¶ 74-88).

      Power contends that he uncovered the extent of the alleged copyright infringement by

Connectweb's customers by searching the customers' websites for evidence that they "had

created derivative works of Power's software by adding a permanent additional independently copyrightable element to his website software, thereby creating an unauthorized derivative work." (Id. ¶ 49).  Allegedly, he was able to make this determination because "each custom rubber stamp that was designed by a customer of any CVW website left a permanent record of the design when the customized stamp was ordered, and this design was publicly accessible without need for authentication to view the design." (Id.).  Power alleges that he was able to download thousands of these images from multiple CVW powered websites, including 640,000 images from Rubber Stamp's website.  (Id. ¶ 50).  According to the plaintiff, he then discovered that the images "contained personally identifiable information for hundreds of thousands of U.S. citizens, and information pertaining to government employees," including, inter alia, "Department of Defense identification numbers for active soldiers, top secret classifications" and "data pertaining to United States nuclear programs," as well as bank account numbers, credit card numbers, social security numbers and dates of birth.  (Id. ¶ 51).  With respect to Rubber Stamp, Power claims that he "exported a limited list of more than 21,000 search results from [the company's] website," which contained customer bank account numbers, "a few credit card numbers and social security numbers[.]" (Id. ¶ 53).  He also claims that Rubber Stamp "knew about at least one of the data breaches but failed to make timely data breach notifications to customers affected and customers likely affected by the data breaches, as required by various state laws." (Id. ¶ 55).  However, Power has not asserted any facts to show that any of the alleged data breaches from Rubber Stamp involved the accounts of any of the defendant's Massachusetts-based customers or that the alleged incidents created any obligations for Rubber Stamp under Massachusetts law.  (See id.).

Additional factual details relevant to this court's analysis are set forth below where appropriate.

## III.  ANALYSIS

### A.  Personal Jurisdition -- Generally

Rubber Stamp has moved to dismiss Power's First Amended Complaint against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In order to exercise personal jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause."  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  In the instant case, Rubber Stamp has relied exclusively on constitutional grounds to challenge personal jurisdiction.  (See Def. Mem. at 4-12).  "If a defendant limits its jurisdictional objection to either statutory grounds or constitutional grounds, the court need only consider those particular grounds."  Motus, 23 F.4th at 122.  Accordingly, this court will proceed directly to the constitutional analysis.

"The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Chen, 956 F.3d at 54-55 (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)) (additional quotations and citation omitted).  Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum."  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288

(1st Cir. 1999).  "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (punctuation and emphasis in original) (quotations and citations omitted).

"Personal jurisdiction may be either general or specific."  Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  Id. (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).  "General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'"  Id. (quoting Phillips Exeter Acad., 196 F.3d at 288).  Thus, a court may assert general jurisdiction over an out-of-state defendant only where the defendant's activities within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (quoting Int'l Shoe, 326 U.S. at 318, 66 S. Ct. at 159).  In this case, Rubber Stamp argues that Power has failed to make the showing necessary to establish that its contacts with Massachusetts are sufficient to satisfy either standard.  (Def. Mem. at 5-12).  This court agrees that the record lacks sufficient support for exercising general jurisdiction over Rubber Stamp in this forum.  However, for the reasons that follow, this court finds that Rubber Stamp's contacts with Massachusetts support this court's assertion of specific personal jurisdiction over the defendant in this case.

[14]

**B.  General Jurisdiction**

The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear, 564 U.S. at 924, 131 S. Ct. at 2853-54.  Accordingly, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction" with respect to a corporation. Daimler, 571 U.S. at 137, 134 S. Ct. at 760 (quotations, punctuation and citations omitted). Additionally, the Supreme Court has left open "the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19, 134 S. Ct. at 761 n.19 (internal citation omitted).

This court finds that there is no basis for a finding of general personal jurisdiction over Rubber Stamp in this forum.  The record establishes that Rubber Stamp is a sole proprietorship that is owned by Michael Roozen, a resident of California.  (Roozen Decl. ¶ 1).  "[I]n California, a sole proprietorship is not a separate legal entity.  Rather, the sole proprietorship and the individual (who owns all the assets and liabilities, and operates the business in his personal capacity) are considered one and the same." Bravado Int'l Group v. Straughn, No. CV 08-06182 RGK (CTx), 2010 WL 11515508, at *4 (C.D. Cal. Jan. 25, 2010) (citing Providence Washington Ins. Co. v. Valley Forge Ins. Co., 42 Cal. App. 4th 1194, 1202 (1996)).  Because there is no evidence

to suggest that Mr. Roozen is domiciled anywhere other than in California, Power has not

shown that Rubber Stamp is subject to general jurisdiction in Massachusetts.

Even if this court were to apply the standard applicable to corporations, there would be

no basis for this court's exercise of general jurisdiction over Rubber Stamp in this case.  It is

undisputed that Rubber Stamp is headquartered and has its principal place of business in

California.  (Roozen Decl. ¶ 3).  It is therefore "at home" in California for purposes of general

jurisdiction.  See Chen, 956 F.3d at 57 (explaining that "[t]he paradigmatic examples of locales

in which a defendant corporation is considered at home are its state of incorporation and the

state that houses its principal place of business.").  On the other hand, the record contains

insufficient facts to show that Rubber Stamp's affiliations with Massachusetts are "'so

continuous and systematic as to render [it] essentially at home in the forum state[,]' i.e.,

comparable to a domestic enterprise in that State."  Daimler, 571 U.S. at 133 n.11, 134 S. Ct. at

758 n.11 (quoting Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851) (internal quotation marks

omitted).  The record establishes that Rubber Stamp has no physical presence in

Massachusetts, owns no property or assets here, and is not registered with the Massachusetts

Secretary of State.  (Roozen Decl. ¶¶ 4, 7-14).  Rather, its links to Massachusetts are limited to

its ownership of a website that is accessible in Massachusetts, its relationship with

Connectweb, and sales to "at least 7,400 customers in Massachusetts" totaling approximately

$345,000.00 in revenue since 2016.  (See Am. Compl. ¶¶ 18, 31, 39-41).  These contacts are far

less significant than those the Supreme Court has described as "the textbook case of general

jurisdiction[.]"  Daimler, 571 U.S. at 129, 134 S. Ct. at 755-56 (describing as a "textbook case of

general jurisdiction" a 1952 decision in which the Supreme Court found that a company

incorporated in the Philippines was subject to general jurisdiction in Ohio where the company

had ceased operating in the Philippines due to World War II and the president of the company

had moved to Ohio where he kept an office, maintained the company's files and oversaw the

company's activities).  They are also less significant than contacts the First Circuit has found

insufficient to justify general jurisdiction over a defendant.  See Swiss Am. Bank, 274 F.3d at 620

(describing cases in which the First Circuit found no general jurisdiction,[5] including a case in

which the First Circuit found no general jurisdiction in Massachusetts over "a British company

that sent an employee to Massachusetts to photograph the plaintiff, directly solicited business

from a Massachusetts company, and received $585,000 in orders from that same company[;]" a

case in which the First Circuit determined that no general jurisdiction "attached in Rhode Island

over the National Hockey League, which for ten years provided league officials at exhibition

games, telecast games into Rhode Island, and sold products with the National Hockey League

logo[;]" and a case in which the First Circuit ruled that no general jurisdiction existed in New

Hampshire with respect to an Indiana company that "employed eight sales representatives in

New Hampshire, conducted business in the state, and advertised in trade journals that

circulated there.").  Furthermore, the Supreme Court has cautioned that

> the general jurisdiction inquiry does not focu[s] solely on the magnitude of the
> defendant's in-state contacts.  General jurisdiction instead calls for an appraisal
> of a corporation's activities in their entirety, nationwide and worldwide.  A

---

[5] In the cases described in Swiss Am. Bank, the First Circuit had no occasion to reach the issue of specific
jurisdiction and confined its analysis to the question of general jurisdiction.  See Noonan v. Winston Co.,
135 F.3d 85, 89 (1st Cir. 1998) (declining to consider whether defendant was subject to specific personal
jurisdiction because the plaintiffs failed to assert the theory in the district court); Donatelli v. Nat'l
Hockey League, 893 F.2d 459, 463 (1st Cir. 1990) (explaining that focus of court's analysis was on
"general as opposed to specific jurisdiction."); Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)
(finding that standard for specific jurisdiction was inapplicable to the circumstances presented in the
case and focusing analysis on general jurisdiction).

corporation that operates in many places can scarcely be deemed at home in all
of them.  Otherwise, "at home" would be synonymous with "doing business"
tests framed before specific jurisdiction evolved in the United States.

Daimler, 571 U.S. at 139 n.20, 134 S. Ct. at 762 n.20 (internal quotations and citation omitted).

Here, the evidence establishes that Rubber Stamp sells its products in all 50 states, and that its

annual sales in Massachusetts "are on par with its sales to customers in states with similar

population sizes."  (Roozen Decl. ¶ 5).  Accordingly, Power has not shown that this is an

"exceptional case" in which Rubber Stamp's Massachusetts contacts are "so substantial and of

such a nature as to render [it] at home" in the Commonwealth.  Daimler, 571 U.S. at 139 n.19,

134 S. Ct. at 761 n.19.

    **C.**    **Specific Personal Jurisdiction**

"Where the defendant is not subject to general jurisdiction, due process may still permit

a district court to exercise specific jurisdiction."  Venmill Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d

59, 67 (D. Mass. 2015).  As the First Circuit has explained,

> [t]he Due Process Clause imposes three requirements for exercising specific
> jurisdiction over out-of-forum defendants.  First, the plaintiff's claim must
> directly arise from or relate to the defendant's activities in the forum.  See
> Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).
> Second, the defendant's forum-state contacts must "represent a purposeful
> availment of the privilege of conducting activities in that state."  Id.  Third, the
> exercise of specific jurisdiction in the forum must be reasonable under the
> circumstances.  See id.  "Failure to make any one of these showings dooms any
> effort to establish specific personal jurisdiction."  Id.

Chen, 956 F.3d at 59.  This court finds that the record in the instant case satisfies each of these

requirements.

<u>Relatedness</u>

The relatedness prong of the jurisdictional analysis requires the plaintiff to demonstrate that his "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." <u>Knox v. MetalForming, Inc.</u>, 914 F.3d 685, 690-91 (1st Cir. 2019) (quoting <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 61 (1st Cir. 2005)). "This flexible, relaxed standard, requires only that the claim have a 'demonstrable nexus' to the defendant's forum contacts[.]" <u>Id.</u> at 691 (quoting <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998)) (internal quotations, citations and punctuation omitted). In the instant case, Power claims that Rubber Stamp infringed and continues to infringe upon his copyright in CVW software through its use of a CVW-powered website that is accessible in Power's home state of Massachusetts and is used to sell the defendant's products to consumers in Massachusetts.[6] This is sufficient to satisfy the relatedness element of the test for specific personal jurisdiction. <u>See</u> <u>IvyMedia Corp. v. iLIKEBUS, Inc.</u>, No. 15-11918-NMG, 2015 WL 4254387, at *3 (D. Mass. July 13, 2015) (concluding that plaintiff's copyright infringement claims were "related to defendants' in-state activities because the alleged wrongdoing [arose] out of the publication of a website" that was accessible in Massachusetts); <u>Gather, Inc. v. Gatheroo, LLC</u>, 443 F. Supp. 2d 108, 115 (D. Mass. 2006) (relatedness element met where "the claimed harm arose out of the

---

[6] Rubber Stamp argues strenuously that Power has failed to satisfy the relatedness requirement because "there is no allegation anywhere in the Complaint that ties Rubber Stamp's alleged infringing activities to anything that Rubber Stamp did in Massachusetts" and that Power's "only allegation about Rubber Stamp's activities in Massachusetts is that Rubber Stamp sold products to Massachusetts consumers." (Def. Mem. at 7-8 (citation omitted)). However, as described above in this court's Statement of Facts, the record establishes that Rubber Stamp uses a CVW-powered website to sell products to customers around the country, including in Massachusetts. It is the defendant's use of that software which forms the basis for Power's infringement claim against Rubber Stamp. (<u>See</u> Am. Compl. ¶ 75 ("To the extent Plaintiff owns CVW, Defendants, excluding Google, have infringed and continue to infringe Plaintiff's exclusive rights as owner of CVW.").

publication of a website in Massachusetts which allegedly caused harm to [the plaintiff] in

Massachusetts"); Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 44 (D. Mass. 1997)

(relatedness satisfied where trademark infringement claims arose from a website that was

"continuously available to Massachusetts residents" and on which the defendant advertised its

services).  Accordingly, Power has met the first prong of the tripartite analysis.

Purposeful Availment

The purposeful availment requirement of the test for specific personal jurisdiction is

satisfied when the plaintiff demonstrates that the defendant "has purposefully availed 'itself of

the privilege of conducting activities within the forum, thus invoking the benefits and

protections of its laws.'" Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018)

(punctuation omitted) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L.

Ed. 2d 1283 (1958)).  This "requirement guarantees that a defendant will not be subjected to

the exercise of jurisdiction based solely on 'random, isolated or fortuitous contacts with the

forum state.'" Baskin-Robbins, 825 F.3d at 36 (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st

Cir. 2007)).  It further "ensures that a defendant will not be swept within a state's jurisdictional

reach due solely to the 'unilateral activity of another party or a third person.'" Id. (quoting

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528

(1985)) (additional citation omitted).  "[T]he two cornerstones of purposeful availment are

voluntariness and foreseeability." Chen, 956 F.3d at 59 (quotations and citations omitted).

"[V]oluntariness demands that the defendant's contacts with the forum result proximately from

its own actions." Id.  Foreseeability requires that "the defendant's conduct and connection

with the forum State [must be] such that he should reasonably anticipate being hauled into

[20]

court there." Id. (quoting Burger King, 471 U.S. at 474, 105 S. Ct. at 2183) (alteration in original).

Power contends that Rubber Stamp availed itself "of the privilege of selling notary stamps and seals in Massachusetts" through the use of a website that offers notary products designed for use in the Massachusetts market. (See Pl. Opp. Mem. ¶ 5).[7] The First Circuit has considered whether an interactive website, located outside the forum state and directed at residents of every state is alone sufficient to establish purposeful availment. See Chen, 956 F.3d at 60 (considering "whether a finding of purposeful availment sufficient to warrant the exercise of specific jurisdiction can be sustained on the basis of a defendant's maintenance of a highly interactive website available in the forum and allegedly accessed by the plaintiff there, even though no accompanying evidence shows that the website either specifically targets the forum or has resulted in the defendant's knowing receipt of substantial revenue from forum residents."); Motus, 23 F.4th at 120-21, 125-26 (considering whether plaintiff established purposeful availment based on defendant's use of website to market itself and interact with customers in Massachusetts and elsewhere in the United States). The First Circuit has held that the availability of such a website, without more, is not enough "to render a defendant susceptible to jurisdiction in a particular forum." Motus, 23 F.4th at 125. See also Chen, 956 F.3d at 60 (concluding that defendant "cannot be subjected to specific jurisdiction in Massachusetts based on its maintenance of an online learning platform accessible in (and allegedly accessed by [plaintiff] from) the Commonwealth."). As the First Circuit has

---

[7] "Pl. Opp. Mem." refers to the Plaintiff's Opposition to Rubber Stamp Champ, Inc.'s Rule 12(b)(2) Motion to Dismiss (Docket No. 59).

emphasized, "'[o]therwise, the universality of websites in the modern world would overwhelm constitutional limitations' and render website operators amenable to suit anywhere within the vast reach of the internet." <u>Motus</u>, 23 F.4th at 125 (quoting <u>Chen</u>, 956 F.3d at 60).  Accordingly, "[t]o establish specific jurisdiction, there must be more."  <u>Id.</u>

This court finds that Rubber Stamp's use of its website to conduct a substantial amount of sales of its products in Massachusetts is sufficient to demonstrate the existence of something "more" in this case.  "When assessing whether a defendant's commercial operation of a website amounts to purposeful availment, [courts] typically look to factors such as evidence of specific targeting of forum residents and evidence that the website has generated 'substantial revenue from forum residents.'" <u>Id.</u> (quoting <u>Chen</u>, 956 F.3d at 60).  In the instant case, the record demonstrates not only that Rubber Stamp sold products "that may only be used by Massachusetts notaries, namely Massachusetts notary seals and stamps[,]" but also that since about 2016, the defendant "has sold products to at least 7,400 customers in Massachusetts totaling more than $345,000.00 in sales[.]"  (Am. Compl. ¶ 18).  Thus, the record supports a finding that Rubber Stamp voluntarily and purposefully served the Massachusetts market for notary products.  <u>See</u> <u>Plixer</u>, 905 F.3d at 10 (ruling that defendant voluntarily served the U.S. market by using its website to obtain contracts from customers in the U.S.).  Moreover, Rubber Stamp's "not insubstantial income from that market show[s] that it could have 'reasonably anticipated' being haled into ... court" in Massachusetts.  <u>Id.</u>; <u>see also</u> <u>id.</u> at 4-5, 9 (finding that use of website to sell services to 156 U.S. customers and obtain revenues of just under $200,000 over the course of three-and-a-half years was "sufficient to put [the defendant] on notice that it should expect to be haled into U.S. court.").  According to Rubber Stamp, its sales

in Massachusetts were comparable to sales in states with similar population sizes, but it does

not claim that its sales in Massachusetts were inconsequential.  (See Roozen Decl. ¶ 5).  Where,

as here, the defendant has "not merely made its website available in the [forum,]" but also

"used that website to engage 'in sizeable and continuing commerce with [forum] customers[,]'"

it should not be surprised to find itself engaged in litigation in the forum state.[8]  Plixer, 905 F.3d

at 8 (quoting Plixer Int'l, Inc. v. Scrutinizer GmbH, 293 F. Supp. 3d 232, 242 (D. Me. 2017)).

Therefore, the second requirement of the test for specific personal jurisdiction has been

satisfied, and this court must go on to determine whether the exercise of personal jurisdiction

over Rubber Stamp would be reasonable under the circumstances presented in this matter.

<u>Reasonableness</u>

The reasonableness requirement of the jurisdictional analysis "ensures that the

assertion of jurisdiction over a defendant 'does not offend traditional notions of fair play and

substantial justice.'"  Rosenthal v. MPC Computers, LLC, 493 F. Supp. 2d 182, 197 (D. Mass.

2007) (quoting Int'l Shoe, 326 U.S. at 316, 66 S. Ct. 158) (additional quotations and citation

omitted).  In analyzing this requirement, courts consider five factors known as the "'gestalt'

factors[.]"  Plixer, 905 F.3d at 12.  Those factors include:

---

[8] Rubber Stamp's reliance on the First Circuit's decision in Motus to defeat purposeful availment is
misplaced.  (See Def. Mem. at 9-10).  As this court explained above, in that case the First Circuit
emphasized that "[w]hen assessing whether a defendant's commercial operation of a website amounts
to purposeful availment, [the court] typically look[s] to factors such as evidence of specific targeting of
forum residents and evidence that the website has generated 'substantial revenue from forum
residents.'"  Motus, 23 F.4th at 125 (quoting Chen, 956 F.3d at 60).  However, in that case, the First
Circuit found that the plaintiff had "adduced no such evidence."  Id.  Here, in contrast, the record
provides evidence that Rubber Stamp targeted forum residents with products designed for the
Massachusetts market and generated substantial revenues from sales of those products to
Massachusetts consumers.  Therefore, Motus supports this court's conclusion that Rubber Stamp
purposefully availed itself of the privilege of conducting business in Massachusetts.

> (1) the defendant's burden of appearing [in the forum], (2) the [forum's] interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (alterations in original) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)).  "The defendant bears the burden of establishing that the exercise of jurisdiction would be unreasonable[.]"  Id.  Here, Rubber Stamp has not presented any specific arguments as to why it would be unreasonable for this court to assert personal jurisdiction over it.  For the reasons that follow, this court also finds that the application of the gestalt factors to the facts of this case weighs in favor of exercising personal jurisdiction.

With respect to the first gestalt factor—the defendant's burden of appearing-- it would be fair to assume that it would be a burden for Rubber Stamp to defend the litigation in this forum, given that it is located in California and has no offices in or other physical presence in Massachusetts.  (See Roozen Decl. ¶¶ 1, 3-4, 9, 12).  On the other hand, because it is almost always burdensome for a party to litigate outside its home state, "[t]he First Circuit has determined that 'this factor is only meaningful where a party can demonstrate some kind of special or unusual burden.'"  EIQnetworks, Inc. v. BHI Advanced Internet Sols., Inc., 726 F. Supp. 2d 26, 35 (D. Mass. 2010) (quoting Pritzker, 42 F.3d at 64).  Rubber Stamp has made no such showing in the instant case.  Therefore, this factor does little to undermine the reasonableness of exercising personal jurisdiction over the defendant.

The second gestalt factor, concerning the forum state's interest in adjudicating the dispute, weighs heavily in favor of keeping the lawsuit in Massachusetts.  Power is located in Massachusetts "and the alleged infringement is likely to have its most significant effects here."

N. Light Tech., Inc. v. N. Lights Club, 97 F. Supp. 2d 96, 107 (D. Mass. 2000).  Furthermore, "Massachusetts has a strong interest in being able 'to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors.'"  Rosenthal, 493 F. Supp. 2d at 198 (quoting Daynard, 290 F.3d at 62).  This interest will be satisfied by keeping the litigation here.

The third factor is the plaintiff's interest in obtaining convenient and effective relief. The First Circuit has repeatedly observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395.  Therefore, this factor weighs in favor of maintaining the litigation in Massachusetts as well.

The fourth gestalt factor, concerning the judicial system's interest in obtaining the most effective resolution of the case, is generally considered "a wash." Hasbro, Inc., 994 F. Supp. at 45-46 (citation omitted).  Moreover, there is no suggestion that Rubber Stamp's home state of California could provide a more efficient resolution of the instant dispute.  Therefore, this factor is neutral and favors neither party.

With respect to the final gestalt factor, which concerns the interests of affected states in promoting substantive social policies,

> the ability of Plaintiff to pursue his claims in Massachusetts arguably furthers the interest of all sovereigns in promoting respect for copyright and providing an avenue for Plaintiff, as a Massachusetts resident, to hold liable an entity that allegedly had the ability to control infringement of his copyright and profited from that infringement.

Rosenthal, 493 F. Supp. 2d at 198.  Therefore, this factor weighs in favor of maintaining jurisdiction in this forum.

[25]

In sum, although it may be somewhat inconvenient for Rubber Stamp to defend this case in Massachusetts, the inconvenience is not significant.  Given that the remaining gestalt factors are neutral or weigh in favor of jurisdiction, the maintenance of the lawsuit against Rubber Stamp in Massachusetts "would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476, 105 S. Ct. at 2184 (quoting Int'l Shoe, 326 U.S. at 320, 66 S. Ct. at 160).  Accordingly, this court finds that the defendant's motion to dismiss for lack of personal jurisdiction should be denied.

### IV.  CONCLUSION

For all the reasons detailed herein, "Defendant Rubber Stamp Champ, Inc.'s Motion to Dismiss" (Docket No. 53) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge